UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**DANNY CREWS**                                                   **PLAINTIFF**

v.                                                      No. 5:22-cv-184-BJB

**OAK GROVE CASINO**                                 **DEFENDANT**

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

For more than two years, Danny Crews gambled at Oak Grove Casino. During that period, he'd visit the Casino three to four times a week—sometimes staying all night. *See* First Amended Complaint (DN 7) at 8–9. Because he'd logged so much activity at Oak Grove, he asserts that he was entitled to "VIP" status that the Casino refused to honor. Now Crews, a citizen of Tennessee proceeding *pro se*, is suing the Casino for allegedly tampering with his player-tier point reading, withholding $1,000 of free play and "VAGUS size rewards," and "illegally keeping [his] money" through the operation of faulty cash-out machines. *See id*.

Oak Grove has moved to dismiss the complaint because Crews allegedly misrepresented his finances in a court-approved application to proceed *in forma pauperis* (to avoid payment of the filing fee). DN 24. Alternatively, the Casino moves for judgment on the pleadings because Crews's complaint fails to comply with Rule 8's notice-pleading requirements. DN 25. Because Crews hasn't overcome those identified shortcomings, the Court grants both motions and dismisses this case.

## I. THE PLEADINGS

Crews filed multiple versions of his complaint against the Casino between 2022 and 2024. *See* DNs 1, 7, 10 & 16. Crews's initial complaint was deficient because he failed to prepare a summons for Oak Grove. DN 4. The next month, the Court ordered Crews file another complaint on approved Court forms, DN 5, which he did. Two months after Crews filed his first amended complaint, the Court granted his application to proceed *in forma pauperis*. DN 9. Three months after that, Crews filed a second amended complaint. DN 10. In December 2023, the Court allowed Crews's Complaint to proceed under 28 U.S.C. § 1915(e)(2) and ordered the Marshals Service and the Clerk of the Court to effectuate service of the second amended complaint on Oak Grove. DN 11.[1]

---

[1] Why the Court order? A plaintiff is typically responsible for effectuating service within 90 days after filing his complaint. But for IFP plaintiffs, such as Crews, the Federal Rules of Civil Procedure assign that task to the U.S. Marshal. *See* FED. R. CIV. P. 4(c). "[W]hen a

1

Consistent with the Court's directive, the Marshals Service served the Casino in January 2024. DN 13. The Casino answered—months late—in April 2024. Then Crews filed a *third* amended complaint—and did so without first seeking the Court's approval. DN 16. The Casino answered right away this time, the Magistrate Judge held a case-management conference, and discovery got underway.

## II. MOTIONS TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS

The Casino's motions don't specify which of Crews's pleadings it treats as operative or seeks to defeat—instead simply referring to "his Complaint." *See, e.g.*, Reply (DN 28) at 3. Nor did the Casino object to Crews's failure to seek leave to file his third amended complaint several months after his prior complaint. *See generally* FED. R. CIV. P. 15(a)(1). Giving the *pro se* plaintiff the benefit of the doubt, therefore, the Court considers the allegations in the third as well as prior amended complaints—asking whether any could sustain his claims under notice-pleading requirements.

### A.  28 U.S.C. § 1915(e)(2)(A)

The Casino first objects that dismissal is appropriate because Crews's financial disclosures contradict his assertion of financial hardship. In his revised application to proceed *in forma pauperis*, Crews described his finances over the preceding 12 months: $1,350 in monthly disability payments as income, *see* DN 8 at 1–2, and monthly expenses that didn't include recreation or entertainment costs, *see id.* at 4. The Court relied on and approved this application. DN 9.

During discovery, however, Crews provided Oak Grove with reports detailing his gaming activity at the Casino. *See* Third Amended Complaint (DN 16) at 12–15 (2020–23 gaming reports); DN 24-1 (2024 gaming reports). Those reports, according to Oak Grove, contradict the income and expense amounts in Crews's two IFP applications. *See* Motion to Dismiss at 3–6; First IFP Application (DN 2) at 2; Second IFP Application (DN 8) at 1–5. For example, the 2023 gaming report includes approximately $215,000 in gambling expenses that Crews neither included in his sworn application nor otherwise mentioned to the Court. *Compare* DN 16 at 15 ("Dollars In"), *with* Second IFP Application at 4 (omitting any gambling expenses). The report also indicates that, on six different occasions in 2023, the Casino filed a W-2G form with the IRS on Crews's behalf. *See* DN 24-1. Casinos must submit a W-

---

plaintiff is proceeding in forma pauperis[,] the court is obligated to issue plaintiff's process to a United States Marshal[,] who must in turn effectuate service upon the defendants, thereby relieving a plaintiff of the burden to serve process once reasonable steps have been taken to identify for the court the defendants named in the complaint." *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996). After an IFP plaintiff "identifies the subject defendant by name, the burden shifts to the United States Marshals Service … to properly effect service." *See Pruitt v. Hazelwood Training Facility*, No. 3:17-cv-74, 2018 WL 11488836, at *1 (W.D. Ky. May 14, 2018) (citation omitted).

2G form whenever a gambler wins a jackpot exceeding $1,200.[2] Ultimately Crews's documents indicate that he spent hundreds of thousands of dollars gambling at Oak Grove between 2020 and 2024. These expenses and income belie his earlier representations of poverty to the Court.

"Proceeding *in forma pauperis* is a privilege and not a right." *Kirkland v. Donahoe*, No. 1:11-cv-48, 2012 WL 2360862, at *3 (S.D. Ohio June 20, 2012) (citing *Weaver v. Toombs*, 948 F.2d 1004, 1008 (6th Cir. 1991)). "The court system depends upon the honesty and forthrightness of applicants to ensure that the privilege is not abused." *Id.* (citing *Chung v. Dushane*, No. 03 C 5955, 2003 WL 22902561, at *2 (N.D. Ill. Dec. 9, 2003)). The IFP statute mandates that a court "shall dismiss the case at any time if the court determines that … the allegation of poverty is untrue." 28 U.S.C. § 1915(e)(2)(A). In applying "the mandatory language of 28 U.S.C. § 1915(e)(2)(A)," courts must dismiss cases in which an IFP plaintiff "fail[s] to rebut the defendant's factual showing that his allegation of poverty is untrue." *See Kirkland*, 2012 WL 2360862, at *3; *Speiser v. U.S. Bank*, No. 3:10-cv-98, 2011 WL 42232, at *5 (E.D. Tenn. Jan. 6, 2011) ("[U]nrefuted evidence demonstrates that plaintiff's allegations of poverty were untrue [so] [t]he Court … must dismiss plaintiff's case."); *Wright v. Watson*, No. 2:22-cv-4042, 2023 WL 3509656, at *4 (S.D. Ohio May 17, 2023), *report and recommendation adopted*, 2023 WL 4042170 (S.D. Ohio June 16, 2023) (dismissing case because IFP plaintiff failed, "when given the chance," to "correct his misrepresentations").

Federal courts also apply § 1915(e)(2)(A) to dismiss cases in which an IFP plaintiff materially misstates his income in support of pauper status. *Thompson v. Carlson*, 705 F.2d 868, 869 (6th Cir. 1983) (affirming dismissal with prejudice where IFP "plaintiff had intentionally misrepresented his financial status in the affidavit to support his request for pauper status"). The first line of the Court's IFP application form, which Crews completed, required him to "swear or affirm under penalty of perjury" that he was "unable to pay the costs of these proceedings" and that his "answers on this form and any attachments are true and correct." DN 8 at 1. Yet Crews identified no source of income during the past 12 months other than disability benefits. Even if we assume Crews was losing rather than earning money at the Casino, moreover, he identified no assets or expenses reflecting the expenditures and winnings disclosed above. This failure to accurately and truthfully describe his financial need in the IFP form supports dismissal. *See Johnson v. Working Am.*, No. 1:12-cv-1505, 2013 WL 3822232, at *7 (N.D. Ohio July 23, 2013) (dismissing IFP complaint because plaintiff misrepresented income); *Cuoco v. U.S. Bureau of Prisons*,

---

[2] *See United States v. Aaron*, 590 F.3d 405, 407 (6th Cir. 2009) (citing Treas. Reg. § 7.6041-1 (2016)) ("In an attempt to track significant gambling income, the Internal Revenue Service ('IRS') requires that any winner of a jackpot of at least $1,200 fill out a W-2G form to be subsequently filed with the IRS by the casino.").

328 F. Supp. 2d 463, 468 (S.D.N.Y. Aug. 2, 2004) ("It is well-established that an allegation of poverty is untrue when an IFP applicant conceals a source of income in order to gain access to a court without prepayment of fees.").

Crews, moreover, has failed to reconcile those inconsistencies between his income, expenses, and assets in his response to the motion to dismiss. That response (DN 26) notes that Crews receives income in the form of disability payments and intends to pay the filing fee depending on the outcome of this case: "I do have disability income [so] depending [on the] case outcome maybe [I] can pay the filing fee $405.00 when [the] case ends." *Id.* at 3. This is not an option available to plaintiffs: they must pay the filing fee at the outset, regardless of outcome, unless they can show pauper status, in which case they don't pay—again, regardless of the outcome. Otherwise this response doesn't undermine the Casino's characterization of his income or his ability to pay the filing fee. *See Browning v. Franklin Precision Indus.*, No. 1:21-cv-71, 2023 WL 2730267, at *7 (W.D. Ky. Mar. 30, 2023) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (citation omitted). Crews's failure to rebut Oak Grove's "factual showing" that he misrepresented his finances sinks his IFP complaint. *Kirkland*, 2012 WL 2360862 at *3.

And given the further failings in his pleadings discussed below, the Court dismisses with prejudice. *See, e.g., Ojose v. Youngstown State Univ.*, No. 19-3221, 2019 WL 8301664, at *1–2 (6th Cir. Dec. 18, 2019) (affirming dismissal with prejudice due to false poverty allegations); *see also Redd v. Redmon*, No. 99-6001, 2000 WL 658291, at *1–2 (6th Cir. May 9, 2000) (affirming dismissal without prejudice due to false poverty allegations).

### B. Rule 8(a)(2)

Dismissal would almost certainly be proper for the separate reason that Crews's complaint(s) fail to plead a plausible case that—if true—would entitle him to relief against Oak Grove. Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." That rule imposes both "legal and factual demands on the authors of complaints." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) (emphasis omitted). A "complaint 'must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Ferron v. Zoomego, Inc.*, 276 F. App'x 473, 475 (6th Cir. 2008) (citations omitted). A *pro se* plaintiff "is not required to recite chapter and verse of the statute upon which he relies," but "must provide the court and the defendant with sufficient information about the basis for his claim." *Bender v. Dep't of Veterans Affairs*, No. 3:20-cv-441, 2021 WL 1087365, at *1 n.1 (S.D. Ohio Mar. 22, 2021) (citation omitted).

4

Although courts hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," this duty does not require courts to "conjure up unpled allegations, or to create a claim for a plaintiff." *Weber v. Metro Louisville Police Dep't*, No. 3:16-cv-213, 2016 WL 3264213, at *2 (W.D. Ky. June 14, 2016) (citations omitted). Doing either would "transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest and most successful strategies for a party." *Id.* (citation omitted); *see also Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) (the role of courts is neither "to ferret out the strongest cause of action on behalf of pro se litigants" nor to "advis[e] litigants as to what legal theories they should pursue.").

Crews's complaint falls short of Rule 8's requirements. It includes three "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, that Oak Grove tampered with Crews's player-tier point reading; second, that it falsely promoted $1,000 of free play and Vegas-sized rewards; and third, that it operated faulty cash-out machines that kept Crews's money. First Amended Complaint at 5–9; Order (DN 11) at 1. To be sure, each accusation alleges misconduct on the Casino's part. But Crews does not identify any cause of action, specify which of his rights the Casino allegedly violated, or otherwise indicate the elements of any contractual, common-law, or statutory violation by the Casino. Nor is any legal violation apparent in the murky allegations. His third amended complaint, moreover, fails to meaningfully improve his earlier pleadings (instead purporting to incorporate them by reference). Crews himself suggests as much, describing the complaint as "hard to write about and for [the Court] to understand." *See* Third Amended Complaint at 2 (cleaned up).

First, Crews says that Oak Grove illegally tampered with his player-tier point reading, which caused him to lose money. The pleadings present "a variety of rambling and incoherent claims in violation of [Rule 8's] short and plain statement requirement." *See Clervrain v. Grimes*, 2021 WL 3284798, at *2 (W.D. Ky. July 30, 2021) (citation omitted). Crews remarks that "Oak Grove Casino cheated player out of V.I.P. player level black tier card caus[i]ng large money lost[;] Casino is illegally tampe[r]ing with customer point reading." First Amended Complaint at 5. Nothing indicates why or how the Casino allegedly tampered with the account, what the player-tier meant for Crews's gaming, how Crews earned these benefits, or whether he was entitled to keep them. The tort or violation, if any, is entirely unclear. As Oak Grove points out, this sort of dispute is usually "settled at a customer service desk, not in federal district court." MJOP at 4. The pleadings fail to put the Casino or Court on notice of what legal liability Crews believes follows from changes to his point totals, or what Crews believes the Casino was or wasn't authorized to do with this account.

Second, Crews accuses the Casino of not treating him in conformity with its advertising of Vegas-sized rewards. The Casino surmises that this might conceivably

be a false-advertising claim. *See id.* at 5. But that would fail, it notes, for lack of any clear misrepresentation or violation thereof. *Id.* Crews's complaint states that the "Casino falsely advertising promotions and tv adds saying new customers get $1,000 … free play at sign up and at V.I.P. player level you get vagus size rewards and free play these are falsely promotions." First Amended Complaint at 8–9. That ambiguous allegation "leaves Oak Grove guessing as to what alleged illegality it is supposed to be defending itself against." *See* MJOP at 3.

The plain text of Oak Grove's allegedly false advertisement makes it hard to detect what promise Crews believes the Casino broke. The flyer states that gamblers who "spin the wheel" can win "*up to* $1000 of free play[.]" *See* Oak Grove Promotional Flyer (DN 16) at 19 (emphasis added). Even on Crews's telling, that's what happened here. He spun the wheel and won $20 in free play—a far cry from the $1000 jackpot or "Vegas-sized" rewards—but a sum consistent with the Casino's advertisement. *See* Free-Play Coupons (DN 16) at 18. And his third amended complaint adds little, if any, clarity with respect to this pleading. *See* DN 16 at 1–3 (summarizing his earlier pleadings); *id.* at 4–8 (copies of earlier complaints); *id.* at 9–23 (exhibits). Crews's pleadings, viewed in the light most favorable to him, fail to allege that Oak Grove's free-play advertisement inaccurately represented the Casino's promotion. Unequipped with sufficient legal and factual context from Crews, the Court declines to "ferret out the strongest cause of action" or advise Crews on what strategies to pursue. *See Young Bok Song*, 423 F. App'x at 510.

Third, Crews alleges that Oak Grove's defective cash-out machines illegally kept money that he earned. *See* First Amended Complaint at 8. He asserts that the Casino "was doing repairs computers and technical work also casino scamming players …. Shortly after earning 40,000 points VIP player black tier card casino gives me a green tier card that's over $200,000 dollars took lost—looks like casino is illegally … cheating [customers] of any rewards." *See id.* The third amended complaint adds that "the [O]ak [G]rove [C]asino cash out … machines [d]id not pay any coins at cash out illegally keeping money." DN 16 at 4.

Even construing this allegation charitably, it fails to state a claim for relief. As Oak Grove notes, Crews "never explicitly stated the circumstances" that explain "why these machines were supposed to dispense coins, and how much money they should have dispensed." *See* MJOP at 6. The pleadings, viewed in the light most favorable to Crews, don't show why, as a matter of fact or law, 40,000 VIP points would've entitled Crews to $200,000 instead of a "green tier card" as a factual or legal matter. Nor does Crews say anything about how he accumulated such vast sums in the first place—particularly given his allegations of penury discussed above. Any conclusion that "lost" winnings amounted to $200,000, or that the Casino somehow "stole" or "converted" benefits it dispensed through these gambling transactions would be pure speculation. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative

6

level[.]") (citation omitted).  Absent any factual or legal bases for recovery, the Court could not award Crews relief with respect to this allegation.

* * *

In many circumstances, granting a motion to dismiss—but with leave to replead—would be the appropriate treatment of a *pro se* complaint such as this. *See Grace v. Kentucky*, No. 5:20-cv-36, 2021 WL 707872, at *6 (W.D. Ky. Feb. 23, 2021) (dismissing *pro se* complaint without prejudice "[i]n the interests of justice" and "so that plaintiff may refile [the] claim.").  But this is not an ordinary situation.  Crews has already filed four complaints, including three amendments, without ever seeking leave of court.  And Crews has filed an IFP application that appears less than truthful according to the documents he shared in discovery.  He has failed, moreover, to offer a good explanation reconciling his IFP filings, factual allegations, and obligation of truthfulness to the Court.  Under these circumstances, therefore, the chance to file a fourth amended complaint and new IFP application would amount to an overindulgence of the Court's and the Casino's consideration.  So the Court will dismiss this case with prejudice. *See, e.g.*, *Lofton v. SP Plus Corp.*, 578 F. App'x 603, 604–05 (7th Cir. 2014) (collecting decisions upholding dismissals with prejudice for plaintiffs' failures to disclose assets on IFP application); *Attwood v. Singletary*, 105 F.3d 610, 612–13 (11th Cir. 1997) (per curiam) (affirming dismissal with prejudice where IFP plaintiff had intentionally misrepresented his financial status in the affidavit to support his request for pauper status); *Romesburg v. Trickey*, 908 F.2d 258, 260 (8th Cir. 1990) (same).

### ORDER

The Court grants Oak Grove's motions to dismiss (DN 24) and for judgment on the pleadings (DN 25) and dismisses Crews's claims with prejudice.  This is a final order.